McKinney, J.,
delivered the opinion of the Court.
The complainant seeks to obtain satisfaction for services rendered by him, and expenses'incurred, in the support and maintenance of his father and mother for a number of years. The bill alleges that a verbal contract was entered into between the complainant and his father to the effect, that, upon the undertaking of the former to support his parents, during life, and to pay his father’s debts, the latter agreed and bound himself, in consideration thereof, to give complainant a tract of land, at his death, or to pay him liberally for his services. The bill alleges that this contract was entered into in 1832, and that complainant, on his part, performed the same during the lives of his father and mother, the former of whom died in 1854, and the latter the preceding year.
The proof docs not establish any such contract as is alleged in the bill. The most distinct statement upon the subject, is found in the testimony of the son of complainant, in which he details a conversation which took place between his father and grandfather. The date of the conversation is not given ; but from the fact stated, that the will of his grandfather was *660 exhibited at the time, which bears date the 24th of August, 1849, the conversation must have been subsequent to that date. The substance of it is : “ Grandfather said that he wanted father to support him and his wife, and to pay his debts, and that he should have the land ■ my father said that he would do it, and did comply with his contract.”
By the will of complainant’s father, above referred to, the two tracts of land, of which he was owner, were devised to complainant. But said will being attested by only one subscribing witness, was inoperative to pass the title to the devisee.
It appears that in December, 1854, after the death of complainant’s father, said will was regularly proved in common form, in the county court of Sumner ; and the complainant was then and there duly qualified as executor thereof. Af-terwards, at the February sessions, 1855, of said court, on the application of the defendants, the probate of the will was set aside, and the will was certified to the circuit court, where an issue was made up to test the validity of so much of the will as assumed to dispose of the real estate ; the validity thereof, so far as the personal estate was concerned, not being-questioned. At the June term, 1858, of the circuit court, a trial of the issue was had ; and the will was declared void as to the devise of the lands, and certified back to the county court; and by the judgment of the latter tribunal, the probate of the will, as to the personal estate, was re-instated, and the order for the appointment of the executor re-affirmed.
Pending the contest upon the will, the complainant filed a bill in equity against the present defendants, in which it was assumed, that, although the will might be inoperative to pass the title to the lands attempted to be devised to him, for want of two subscribing witnesses, yet effect might be given to it as a deed, or, if not so, that it was such a “ writing” as under the statute of frauds, would entitle him to a specific execution of the contract.
This bill was finally dismissed in this court, at the December term, 1857.
*661 After the dismissal of that bill, and after the termination of the contest upon the will, the present bill wras filed, to recover compensation for the value of complainant’s services, on the ground that complainant was without remedy at law, being himself the personal representative of the estate of his alleged debtor.
To this bill the defendants set up, in their answer, and rely upon the decree in the former cause, and also upon the statutes of limitation of two, and of six, and of seven years, in bar of any relief.
The Chancellor, however, decreed for the complainant, and ordered an account of the value of the services of complainant, and his expenditures.
We are aware of no principle upon which this decree can be maintained. In the first place, there is no proof whatever of any promise or agreement on the part of John Byrn to make complainant compensation in money, or in any other mode than was attempted, namely, by giving him the land, at his death. And this having failed, it is clear, that if any remedy at all were left to the complainant, it was founded, not upon the contract, but altogether aside from it, upon an implied promise. Whether or not, in such a case, the law would imply a promise to compensate the party, in money, is a question not necessary to be decided, and we express no opinion upon it. It is sufficient for the present case, that if such a contract or promise might be implied, the statute of limitations would form a bar to the recovery for any services rendered beyond the period of six years before the commencement of the suit. And evidence of a promise to give the land, or of an ac-knowledgement of the obligation to do so, would not be admissible, either to support the action founded on the implied promise ; or to defeat the operation of the statute.
But, again : The complainant having taken no effectual or proper stops to assert this claim, within two years from the date of his qualification as executor, how is the bar ot' the act of 1789, ch. 23, sec. 4, to be avoided?
The order of the county court setting aside the probate of *662 the will in common form, in that court, was inoperative. The court had no power to make such an order. The probate in common form, in such case, can be annulled only by the judgment of the circuit court, founded upon the verdict of a iury against the validity of the will. See 2 Swan, 162; 2 Sneed, 678.
It is clear, therefore, that the validity of the will as to the personal estate, remained unaffected by the proceeding in the circuit court; and the probate of the will, to that extent, and the qualification of the executor, in like manner, remained unaffected. The office of executor, which had been regularly conferred on the complainant, with all its rights, duties and consequences, continued to exist in full force, as if no contest upon the will had taken place. So far as regarded the proceeding to have the will declared inoperative as to 'the lands, attempted to be devised, the complainant, in his character of executor, had nothing' to do, except merely to allow the use of his name, as a matter of form ; but it did not at all interfere with his rights or duties as executor, in the management of the personal estate, as to which there was no question involved in the contest.
From this it follows, that the subsequent appointment of the complainant as administrator, in August, 1858 — after the contest was at an end — was not only unnecessary and improper, but likewise null and void ; and in the character of executor, the complainant continued to be, and still is, the legal representative ol the estate.
Wo have seen that the complainant was qualified, and properly constituted executor, in December, 1854 ; and the demand, now set up, then existed and was due, according to the statement of the bill, which was not filed until the first of September, 1858. Can this demand be now enforced- — -all other objections out of view, for the present — under the act of 1789? We think not.
We have already held that an administrator cannot enforce the satisfaction of a claim due to himself, if, at the time of his administration, it were barred by the general statute of *663 limitations. 10 Humph., 301. And in the case of Wharton and Wife v. Marberry, 3 Sneed, 603, the principle was extended, so as to apply to a case where, though the demand was not barred at the time of administration, yet the length of time requisite to form the bar, had elapsed before the executor took any measure to obtain satisfaction thereof. And sugh is now the settled rule, as respects the application of the general statutes of limitation. This is giving to tbe general statutes a more rigid and severe aplication, as against the personal representative of tbe estate, when a creditor, than against other creditors. As regards other creditors, tbe personal representative may, at his peril, exercise a discretion, whether to set up the statute or not; but in regard to Ms own demand, he is intrusted with no such discretion. This reasoning applies with equal, if not greater, force, to the act of 1789, limiting the time within which the creditors of deceased persons shall bring suit. As respects this statute, it has always been held that the personal representative has no discretion; and his neglect to set it up as a defence, whereby a recovery is had against him, is held to be a devas-tavit. All the reasons for requiring other creditors to assert their claims against the estate, within the time limited by this act, apply with increased force, to the claim of the personal representative. And the question being now directly presented, for the first time, we hold that, if proper and effectual steps be not taken, within the time limited, by the personal representative, to enforce satisfaction of a claim in his own favor, upon the estate, tbe act of 1789 will form a bar, as in tbe case of other creditors failing to sue within the proper time. This point is decisive of the whole case. It does not become necessary, therefore, to notice the question, whether or not the proceedings and decree upon the former bill, are a bar to the present suit.
Decree reversed, and bill dismissed.